UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X
                                           :

DAVID ARCOS,                         :
                                             :

                    Plaintiff,     :

                                             :

                     v.                 :
                                             :

THE NEW SCHOOL UNIVERSITY,   :
                                             :

                    Defendant.  :
                                             :

----------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 31, 2017

14 Civ. 2678 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

      Plaintiff David Arcos, who was born in Cuba, is a former part-time faculty member at Defendant The New School University ("TNS"). In 2014, Plaintiff sued TNS and two of its employees — Meredith Mullane and Juliette Cezzar (together with TNS, "Defendants")[1] — claiming that they had discriminated and retaliated against Plaintiff because of his ethnicity and national origin. After a round of summary-judgment briefs winnowed down Plaintiff's claims, this case proceeded to a jury trial in May 2016.

      The jury returned a partial verdict. It rejected Plaintiff's claims that Mullane and Cezzar discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); 42 U.S.C. § 1981; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 301

---

[1]     As the Court will explain, the jury rejected all of Plaintiff's claims for individual liability against Mullane and Cezzar. As a result, Mullane and Cezzar are no longer defendants in this case. Nonetheless, for ease of exposition, this Opinion uses the term "Defendants" to refer collectively to TNS, Mullane, and Cezzar, all three of whom were defendants at trial.

(the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the "NYCHRL"). And it rejected Plaintiff's claims that TNS, Mullane, and Cezzar had subjected Plaintiff to a hostile work environment in violation of the NYSHRL. But the jury did not reach a unanimous verdict on Plaintiff's four remaining claims of discrimination under Title VII, § 1981, the NYSHRL, and the NYCHRL.

Pending before the Court is TNS's post-trial motion. It has two parts. First, TNS moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Taking aim at the four claims on which the jury deadlocked, TNS argues that Plaintiff failed to prove a prima facie case of discrimination under Title VII, § 1981, the NYSHRL, or the NYCHRL. Second, and in the alternative, TNS urges the Court to dismiss Plaintiff's four remaining claims because Plaintiff committed fraud on the Court by lying throughout this case. For the reasons set forth below, the Court denies TNS's motion in its entirety.

## BACKGROUND[2]

This Opinion assumes the reader's familiarity with the testimony adduced and exhibits introduced at trial. A précis of the evidence the jury heard, the arguments TNS made in support of its mid-trial Rule 50(a) motion, and the jury's verdict, follows.

---

[2] This Opinion draws on facts from the transcript ("Tr.") of the six days of trial testimony (May 17, 18, 19, 23, 24, and 25, 2016) the jury heard, and from the exhibits that Plaintiff ("Pl. Ex.") and Defendants ("Def. Ex.") introduced. For ease of reference, the Court will refer to TNS's brief in support of its post-trial motion as "Def. Br." (Dkt. #95), and to Plaintiff's opposition brief as "Pl. Opp." (Dkt. #104; *see* Dkt. #101-03).

Plaintiff began teaching at TNS in 2001; he resigned in August 2014. (Tr. 12, 150). While employed at TNS, Plaintiff was a member of a union that included part-time faculty members. (*See, e.g.*, *id.* at 19-20; Pl. Ex. 8, Art. I, § A). Pursuant to that union's collective-bargaining agreement with TNS (the "CBA"), certain part-time faculty members (including Plaintiff) received a "base load" of courses — a number of teaching hours that TNS was "under a proactive obligation to fulfill." (*Id.* at 268, 537, 564; *see* Pl. Ex. 8, Art. XIII, § B(3)). TNS never once fulfilled Plaintiff's base load. (*See* Tr. 66, 542). This was not uncommon: Throughout Plaintiff's tenure with TNS, hundreds of part-time faculty members (including hundreds of Caucasian[3] faculty members) "did not have their base loads met." (*Id.* at 308; Def. Ex. ZZ). Plaintiff, however, ascribed TNS's failure to meet his base load to intentional discrimination based on his ethnicity and national origin. (*See, e.g.*, Tr. 111, 151-52, 168-69).

Embedded in the issue of Plaintiff's unmet base load was a question that occupied much of the trial: How did TNS assign courses to its part-time faculty members? Several of TNS's employees testified that courses were assigned pursuant to a two-step process that the CBA mandated. (*See, e.g.*, Tr. 271, 624). First, faculty members at TNS (like Cezzar) would determine which part-time faculty members were "qualified" to teach a given course. (*Id.* at 278, 330-

---

[3]      The Court recognizes that the nomenclature of race and ethnicity is a deeply nuanced topic. The parties in this case understandably did not engage to any significant degree with this topic, because they agreed that Plaintiff was both foreign-born and Hispanic. In this Opinion, the Court uses the terms adopted by the parties, "Caucasian" and "white," to refer to TNS comparators who are not members of Plaintiff's (or other) protected classes.

32, 822-23). Second, TNS would assign that course to the most senior qualified faculty member (assuming that that faculty member's base load had not yet been met). (*Id.* at 271, 488, 541). Part-time faculty members accrued seniority for each semester they taught. (*Id.* at 303-04).

This first step — assessing a part-time faculty member's qualifications — involved a degree of subjectivity. Indeed, on cross-examination, Cezzar conceded that during her deposition she testified that she decided whether faculty members were qualified to teach courses "by gut." (Tr. 865). And the evidence at trial suggested that the criteria for assessing which faculty members were qualified to teach one particular course, "PSAM 1028: Web Design Basics," changed over time. (*See, e.g.*, *id.* at 91-92; Pl. Ex. 55). The Court will chart how those criteria changed, and why those changes preclude the Court from granting TNS's Rule 50(b) motion, *infra*. Here, the Court notes that Cezzar deemed Plaintiff unqualified to teach PSAM 1028 for the Fall 2012 semester. (Tr. 25, 289-90). But Cezzar determined that Amy Finkel — who is more junior than Plaintiff, and white — was qualified to teach the course. (Pl. Ex. 6; Def. Ex. TT, JJJJJJJ).

Mid-trial, Defendants moved for judgment as a matter of law pursuant to Rule 50(a). (Tr. 687). They argued that Plaintiff had failed to establish a prima facie case of ethnic discrimination. (*Id.*). The crux of Defendants' argument was that Plaintiff had not pointed to a single act undertaken by one of TNS's employees that demonstrated discriminatory intent. (*Id.* at 688-94). In the alternative, Defendants asked the Court to dismiss Plaintiff's case for

"[r]epetitive fraud on the court." (*Id.* at 697-98). Plaintiff, Defendants claimed, lied during his deposition, lied to the EEOC in his Charge of Discrimination, then delivered inconsistent testimony at trial. (*Id.* at 697-700). After hearing from Plaintiff, the Court reserved judgment on Defendants' motion. (*Id.* at 700-09).

The jury heard six days of testimony, deliberated for three days, then returned a verdict on May 27, 2016. (Dkt. #84). The jury rejected Plaintiff's claims that Mullane and Cezzar had discriminated against him. (*Id.*). And it determined that TNS, Mullane, and Cezzar had not created an actionable hostile work environment. (*Id.*). In consequence, the jury's verdict terminated Mullane and Cezzar as defendants in this action. (*Id.*). But the jury deadlocked on four of Defendant's claims against TNS, *viz.*, that the school had discriminated against Plaintiff in violation of (i) Title VII, (ii) § 1981, (iii) the NYSHRL, and (iv) the NYCHRL. (*Id.*). The Court accepted the jury's partial verdict.

***

On September 30, 2016, TNS filed a renewed motion for judgment as a matter of law under Rule 50(b). (Dkt. #94-95). The motion requested that, in the alternative, the Court dismiss Plaintiff's case because Plaintiff committed fraud on the court. (*Id.*). Plaintiff opposed the motion on November 21, 2016 (Dkt. #101; *see also* Dkt. #104), and briefing concluded when TNS filed a reply brief on December 16, 2016 (Dkt. #107).

# DISCUSSION

TNS's Rule 50(b) argument presents a close call; its fraud on the court argument is less successful — though it, too, raises cause for concern. At trial, TNS introduced ample evidence that it did not fulfill Plaintiff's base load for reasons that had nothing to do with his ethnicity. And, more broadly, Plaintiff was one of many part-time faculty members who, year in and year out, did not have their base loads met. The evidence that anyone affiliated with TNS intentionally discriminated against Plaintiff because he is Hispanic was thin.

But there was a sticking point. TNS refused to allow Plaintiff to teach PSAM 1028 over his repeated protests that he was qualified to do so. In Plaintiff's stead, Finkel — who is not a member of Plaintiff's protected class — taught the course in Fall 2012. That fact alone does not defeat TNS's motion for judgment of a matter of law. What *does* compel the Court to deny TNS's motion are the oft-shifting, opaque criteria that TNS's employees applied to determine that Plaintiff was not qualified to teach PSAM 1028.[4]

Mindful of the very high bar Rule 50(b) imposes, the Court cannot conclude as a matter of law that Plaintiff failed to establish a prima facie case under Title VII, § 1981, the NYSHRL, or the NYCHRL. TNS is thus not entitled to judgment as a matter of law on Plaintiff's four remaining claims.[5] And

---

[4]  For similar reasons, the Court denied in part Defendants' motion for summary judgment. (*See* Dkt. #61, at 9-10, 16-18).

[5]  In passing, TNS argues that "[e]ven assuming that Plaintiff made out a *prima facie* case of discrimination," several TNS employees who testified at trial — during Plaintiff's case, no less — offered "legitimate non-discriminatory reasons … and Plaintiff did not demonstrate, or even attempt to argue, that those reasons were pretextual." (Def. Br. 14). TNS did not raise this argument — which touches on the second and third steps of the *McDonnell Douglas* framework — during its mid-trial Rule 50(a) motion.

because Plaintiff's conduct, while troubling, does not constitute a fraud on the Court worthy of dismissal, the Court denies TNS's post-trial motion in its entirety.

## A. TNS Is Not Entitled to Judgment as a Matter of Law on Plaintiff's Four Remaining Claims of Discrimination

### 1. Applicable Law

Two legal principles guide the Court's consideration of TNS's request for judgment as a matter of law. First, the standard Rule 50(b) imposes for granting such a motion. Second, the elements of a prima facie claim for discrimination under Title VII, § 1981, the NYSHRL, and the NYCHRL. The Court considers each in turn.

---

(Tr. 687-97). Thus, this Court can enter judgment as a matter of law on this ground "only if necessary to prevent manifest injustice." *MacDermid Printing Sols. LLC* v. *Cortron Corp.*, 833 F.3d 172, 181 (2d Cir. 2016) (quoting *Crawford* v. *Tribeca Lending Corp*, 815 F.3d 121, 127 (2d Cir. 2016) (per curiam)). TNS offers no reason for this Court to conclude that manifest injustice will result if the Court does not enter judgment on the basis of this argument.

And even if TNS *had* raised this argument in support of its Rule 50(a) motion, it would fail here. Many TNS employees offered a similar justification for why Plaintiff never taught PSAM 1028: He was not qualified. *See infra* at 12-15. Assuming that this justification constituted a legitimate, non-discriminatory reason for TNS's action (the second *McDonnell Douglas* step), the jury had an adequate evidentiary basis to conclude that that reason was pretextual (the third). *See, e.g.*, *Jaquez* v. *N.Y.C. Health & Hosps. Corp.*, No. 14 Civ. 3393 (AJN), 2016 WL 155279, at *7 (S.D.N.Y. Jan. 12, 2016) ("The final step in applying the *McDonnell Douglas* framework is to determine whether the plaintiff has created a genuine issue of fact with respect to whether 'the employer's [proffered] reason was in fact pretext for discrimination.'" (internal quotation marks omitted) (quoting *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). As the Court will explain, the evidence at trial established that the criteria used to assess which faculty members were qualified to teach PSAM 1028 were amorphous and inconsistently applied. And drawing all inferences in Plaintiff's favor, as Rule 50 commands, the Court believes that that evidence was sufficient to establish pretext. In consequence, even if TNS had addressed the second and third *McDonnell Douglas* steps during its mid-trial Rule 50(a) motion, those arguments would be unavailing at this stage.

### a. Rule 50(b)

"Rule 50 imposes a heavy burden on [a] movant[.]" *Elsevier, Inc.* v. *Grossman*, 199 F. Supp. 3d 768, 778 (S.D.N.Y. 2016) (internal quotation mark omitted) (quoting *Cash* v. *Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011)), *order corrected*, No. 12 Civ. 5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016). Rule 50(a) provides that a party can move "for judgment as a matter of law … at any time before the case is submitted to the jury" on the ground "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the" non-moving party. Fed. R. Civ. P. 50(a). "A party who moved at trial for judgment as a matter of law under Rule 50(a) may file a renewed motion after trial for judgment as a matter of law under Rule 50(b)." *Johnson* v. *Burns*, No. 15 Civ. 4789 (PAE), 2017 WL 1755971, at *4 (S.D.N.Y. May 4, 2017). And Rule 50(b) instructs that "[i]n ruling on the renewed motion, [a] court may: [i] allow judgment on the verdict, if the jury returned a verdict; [ii] order a new trial; or [iii] direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

"A Rule 50 motion may only be granted if 'there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Warren* v. *Pataki*, 823 F.3d 125, 139 (2d Cir.) (quoting *S.E.C.* v. *Ginder*, 752 F.3d 569, 574 (2d Cir. 2014)), *cert. denied sub nom. Brooks* v. *Pataki*, 137 S. Ct. 380 (2016). "In reviewing a

8

Rule 50 motion, all credibility determinations and reasonable inferences of the jury are given deference and [the court] may not weigh the credibility of witnesses." *Vangas* v. *Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016). In turn, "[j]udgment as a matter of law is appropriate 'only if [the court] can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party.'" *Warren*, 823 F.3d at 139 (quoting *Zellner* v. *Summerlin*, 494 F.3d 344, 370-71 (2d Cir. 2007)).

### b. Establishing a Prima Facie Case of Discrimination Under Title VII, § 1981, the NYSHRL, and the NYCHRL

"The substantive standards applicable to claims of employment discrimination under Title VII ... are also generally applicable to claims of employment discrimination brought under § 1981 ... and the NYSHRL[.]" *Vivenzio* v. *City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). But "courts must analyze NYCHRL claims separately and independently from any federal and state law claims," because the NYCHRL calls for more expansive liability than its federal and state counterparts. *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Consistent with this approach, the Court considers separately these two classes of statutes:

Title VII, § 1981, and the NYSHRL: "Title VII, § 1981 and ... NYSHRL claims are all considered under the framework set forth in *McDonnell Douglas* v. *Green,* 411 U.S. 792 [ ] (1973)[.]" *Taylor* v. *City of N.Y.*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016) (alteration omitted); *see also Cross* v. *N.Y.C. Transit Auth.,*

417 F.3d 241, 248 (2d Cir. 2005) (noting that the "*McDonnell Douglas* analysis applicable to motions for summary judgment provides useful guidance" for courts adjudicating "Rule 50 challenge[s]").

The *McDonnell Douglas* framework has three steps; although TNS takes issue only with the first, the Court will address the other two for context. First, "[a] plaintiff presents a prima facie case" of discrimination "when he establishes: [i] that he belonged to a protected class; [ii] that he was qualified for the position he sought; [iii] that he suffered an adverse employment action; and [iv] that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Abrams* v. *Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d Cir. 2014). Second, "[a]n employer may then rebut this prima facie case by offering a legitimate, nondiscriminatory business reason for its conduct." *Chin* v. *Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012). Finally, "[a] plaintiff ultimately prevails if he proves that the defendant's employment decision was based in whole or in part on intentional discrimination." *Id.*

NYCHRL: "It is unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims." *Mihalik*, 715 F.3d at 110 n.8. "Nevertheless, the burden-shifting framework is frequently applied to NYCHRL claims." *Li* v. *Cushman & Wakefield, Inc.*, No. 16 Civ. 2484 (DLC), 2017 WL 1740440, at *4 n.4 (S.D.N.Y. May 3, 2017); *see also Ya-Chen Chen* v. *City Univ. of N.Y.*, 805 F.3d 59, 75-76 and n.13 (2d Cir. 2015) (noting that the approach many New York courts have adopted to analyze

NYCHRL discrimination claims "closely mirrors the questions that courts must answer when resolving summary judgment motions on Title VII claims").

But there is an important distinction between the way courts analyze NYCHRL claims, on the one hand, and claims under Title VII and similar statutes, on the other. To make out a claim for discrimination under the NYCHRL, a plaintiff need not establish that he suffered a "materially adverse employment action[ ]" (i.e., the third prong of a prima facie Title VII case). *Mihalik*, 715 F.3d at 114; *see Abrams*, 764 F.3d at 251. "Instead, to establish liability under the NYCHRL, the plaintiff need only show differential treatment — that [he] is treated *'less well'* — because of a discriminatory intent." *Makinen* v. *City of N.Y.*, 167 F. Supp. 3d 472, 483 (S.D.N.Y. 2016) (emphasis added) (internal quotation marks omitted) (quoting *Mihalik*, 715 F.3d at 110). And to determine whether a plaintiff has made this showing, "a court must consider the totality of the circumstances because 'the overall context in which the challenged conduct occurs cannot be ignored.'" *Li*, 2017 WL 1740440, at *4 (quoting *Mihalik*, 715 F.3d at 111).

To be sure, "the NYCHRL is not a general civility code." *Mihalik*, 715 F.3d at 113. But it casts a wider net than its federal and state analogues, and courts must "constru[e] the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Id.* at 109 (quoting *Albunio* v. *City of N.Y.,* 16 N.Y.3d 472, 477-78 (2011)).

## 2.    Analysis

Viewed through Rule 50(b)'s lens, TNS's motion for judgment as a matter of law poses a narrow question:  Drawing every inference against TNS, would "a reasonable juror … have been *compelled* to" conclude that Plaintiff failed to establish a prima facie case of discrimination under Title VII, § 1981, the NYSHRL, or the NYCHRL?  *Warren*, 823 F.3d at 139 (emphasis added) (citation omitted).  The answer, the Court is constrained to conclude, is "no."  And in particular, the evidence concerning Plaintiff's failed attempts to teach PSAM 1028 gave the jury adequate grounds to answer that question in Plaintiff's favor.

Below, the Court explains that conclusion — first by considering Plaintiff's claims under Title VII, § 1981, and the NYSHRL, and then by turning to Plaintiff's NYCHRL claim.

### a.    Title VII, § 1981, and the NYSHRL

To review, a prima facie case of discrimination under Title VII, § 1981, and the NYSHRL has four prongs.  A plaintiff must establish:  "[i] that he belonged to a protected class; [ii] that he was qualified for the position he sought; [iii] that he suffered an adverse employment action; and [iv] that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Abrams*, 764 F.3d at 251-52.  The evidence at trial was sufficient to establish all four prongs:

Prong One — Protected Class:  Plaintiff is a member of a protected class: He was born in Cuba and is Hispanic.  (Tr. 2, 152).  TNS does not dispute this first prong.  (*See id.* at 687).

Prong Two — Qualifications:  Contrary to TNS's principal argument, the jury had sufficient evidence to find that Plaintiff was qualified to teach PSAM 1028.  "In order for a plaintiff to satisfy the 'minimal' burden of demonstrating that [he] was qualified for" a position he sought, "[he] must show only that [he] 'possesses the basic skills necessary for performance of [the] job.'"  *Emmanuel* v. *Cushman & Wakefield, Inc.*, No. 13 Civ. 2894 (GHW), 2015 WL 5036970, at *4 (S.D.N.Y. Aug. 26, 2015) (quoting *Slattery* v. *Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)).  But a discrimination plaintiff's "subjective belief" that he is qualified for a position is not enough to satisfy this second prong of a prima facie case.  *Klier* v. *Snow*, No. 03 Civ. 4508 (HB), 2004 WL 1375259, at *4 (S.D.N.Y. June 17, 2004); *accord Thomas* v. *iStar Fin., Inc.*, 438 F. Supp. 2d 348, 358–59 (S.D.N.Y. 2006), *aff'd*, 629 F.3d 276 (2d Cir. 2010) (per curiam).  To the contrary, "whether an employee is 'qualified'" for a job "depends on the *employer's* criteria for the performance of the job — not the standards that may seem reasonable to the jury or judge."  *Boston* v. *Macfadden Publ'g, Inc.*, No. 09 Civ. 457 (RJH), 2010 WL 3785541, at *7 (S.D.N.Y. Sept. 29, 2010) (emphasis added) (quoting *Thornley* v. *Penton Publ'g, Inc.,* 104 F.3d 26, 29 (2d Cir. 1997)).

Applying that standard in this case raises a question that was not answered squarely at trial:  What were TNS's criteria for determining whether a

part-time faculty member was qualified to teach PSAM 1028? During a meeting on October 2, 2012, Cezzar explained to Arcos that he was not qualified to teach the class during the Fall 2012 semester because he had not created three websites in the preceding two years. (Tr. 89-92; *accord id.* at 848). That standard was not included in the course catalog entry for PSAM 1028. (*Id.* at 93; *see* Pl. Ex. 39). Nor was it "published to the faculty prior to [Cezzar] assigning the course[ ] in Spring of 2012." (Tr. 849).

The jury had good reason to conclude that Cezzar's criteria were "not in practice ... part of the 'basic eligibility for the position at issue[.]'" *Aulicino* v. *N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 81 (2d Cir. 2009) (quoting *Slattery*, 248 F.3d at 91-92). In a June 11, 2012 e-mail to three other TNS employees, Mullane questioned whether Arcos was qualified to teach PSAM 1028, because "[i]t [was] necessary for the faculty member teaching this course to have advanced ability with and experience teaching HTML, XHTML, and CSS." (Def. Ex. N). In contrast, on June 12, 2014 (after Plaintiff reapplied to teach PSAM 1028), Geycel Best, the Director of Part-Time Faculty for Parsons at TNS, told Plaintiff that he was unqualified to teach the class in part because he did not have "a portfolio of work publicly available that show[ed] at least three projects completed over the last *three* years." (Pl. Ex. 47 (emphasis added); *see* Tr. 879, 939).

It was also unclear why one part-time faculty member — Amy Finkel — *was* qualified to teach PSAM 1028. Cezzar approved Finkel to teach the course on June 12, 2012; in an e-mail to TNS administrator Lacie Garnes, Cezzar

wrote: "Though [Finkel's] site itself is out of date, the work is up to date. She has the green light from me." (Def. Ex. JJJJJJJ). But in a 2014 e-mail Cezzar wrote concerning a union grievance Plaintiff filed after being denied the opportunity to teach PSAM 1028, Cezzar reported that she could not determine whether Finkel and another part-time faculty member, Fred Murhammer, were in fact qualified to teach the class. (Pl. Ex. 55; *cf.* Tr. 893 (Cezzar explaining that "[t]he only thing" her "e-mail indicate[d] is that [Finkel was] not qualified in 2014 in February")). Basta, remarking on Cezzar's conclusion (or lack thereof), wrote: "This is problematic." (Pl. Ex. 55). And Basta added that, for purposes of Plaintiff's union grievance, "[t]he fact that [Cezzar] didn't know whether [Finkel or Murhammer] meet the criteria means that the criteria were not considered at the time those assignments were made." (*Id.*).

Plaintiff, of course, believed that he was qualified to teach PSAM 1028. (*See, e.g.*, Tr. 71). He testified that it was "a basic web design course" (*id.* at 24-25) — a description Mullane echoed almost verbatim in a September 25, 2012 e-mail to Cezzar. (Def. NNN ("The course description seems to indicate this is a much more basic, technology based course.")). The description for PSAM 1028 in TNS's course catalog described the class as "an introduction to web design and development." (Pl. Ex. 39). And the 2012 version of Plaintiff's resume provided that Plaintiff had experience teaching "Web Design and Construction," "Web Basics," and "HTML5/CSS3" at TNS. (Pl. Ex. 38; *see* Tr. 134).

In sum, the jury heard many different perspectives on the "qualifications" a part-time faculty member needed to have in order to teach PSAM 1028. Drawing every inference in Plaintiff's favor, the Court simply cannot conclude that "a reasonable juror would have been compelled to" determine that Plaintiff was unqualified. *Warren*, 823 F.3d at 139 (citation omitted). The evidence at trial established that PSAM 1028 was an introductory web design course, and that Plaintiff had experience teaching similar subjects. For the purposes of TNS's Rule 50(b) motion, Plaintiff satisfied the second prong of his prima facie case.

Prong Three — Adverse Employment Action: Plaintiff suffered an adverse employment action when TNS did not assign him to teach PSAM 1028 in Fall 2012. "[D]enying" a plaintiff "compensation opportunities [is] sufficient to" constitute an adverse employment action. *Galanis* v. *Harmonie Club of the City of N.Y.*, No. 13 Civ. 4344 (LTS), 2014 WL 101670, at *4 (S.D.N.Y. Jan. 10, 2014). Just so here. As a part-time faculty member, Plaintiff was paid for each course he taught. (*See* Tr. 313). Thus, when Plaintiff was not allowed to teach PSAM 1028, he lost out on compensation. That qualifies as an adverse employment action. *Compare Rogers* v. *Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *6 & n.7 (S.D.N.Y. Feb. 26, 2016) (assuming without deciding that university's "denial of [p]laintiff's request to teach additional courses constitute[d] an adverse employment action," and collecting cases for proposition that "work assignments may constitute adverse employment actions if they affect, *inter alia*, compensation"), *with Klein* v. *N.Y. Univ.*, 786 F.

16

Supp. 2d 830, 847 (S.D.N.Y. 2011) ("A university professor's dissatisfaction with course assignments when he or she does not allege any resulting loss in wages is not an adverse employment action." (internal quotation marks and citation omitted)).

<u>Prong Four — Inference of Discriminatory Intent</u>:  Finally, Plaintiff established that he was denied the opportunity to teach PSAM 1028 "under circumstances giving rise to an inference of discriminatory intent." *Abrams*, 764 F.3d at 251-52.  "'A showing that an employer treated [a] plaintiff less favorably than a similarly situated employee' outside of [that plaintiff's] protected class is a 'recognized method of raising an inference of discrimination for the purposes of making out a prima facie case.'" *Medcalf* v. *Thompson Hine LLP*, 84 F. Supp. 3d 313, 327 (S.D.N.Y. 2015) (quoting *Abdul-Hakeem* v. *Parkinson,* 523 F. App'x 19, 20-21 (2d Cir. 2013) (summary order)).  "To establish an inference of discrimination," on this basis, "a plaintiff must allege that '[he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self.'" *Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham* v. *Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).  "What will constitute 'all material respects' will vary from case to case, of course." *Id.*  But it is well settled that a plaintiff does not need to show that he is "identical" to a co-worker in order to satisfy this final prong of a prima facie discrimination case. *Ruiz* v. *Cty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (internal quotation mark omitted) (quoting *Graham*, 230 F.3d at 40).  Instead, "the judgment rests on 'whether the plaintiff and those he

maintains were similarly situated were subject to the same workplace standards,'" such that "[t]he plaintiff's and comparator's circumstances … bear a 'reasonably close resemblance.'" *Brown*, 756 F.3d at 230 (quoting *Graham*, 230 F.3d at 40).

Plaintiff made this showing. Finkel, who is white, taught PSAM 1028 in Fall 2012. (Pl. Ex. 6; Def. Ex. TT).[6] And the evidence at trial established that Plaintiff and Finkel were similarly situated. By the time Plaintiff brought suit, both Plaintiff and Finkel had worked for TNS for roughly a decade — though of note, Finkel was *less* senior than Plaintiff. (Tr. 73, 142, 294; Pl. Ex. 6). The two shared similar educational and professional backgrounds: Both held Masters of Fine Arts degrees from TNS, and both had working experience in web design. (Pl. Ex. 38; Pl. Ex. 64). And critically, as part-time faculty members, Plaintiff and Finkel were both granted base loads (*see* Def. Ex. TT), and TNS had an obligation to attempt to meet their base loads pursuant to the

---

[6]     A note about Plaintiff's claimed bases for discrimination bears mention here. The verdict form asked the jury to determine whether Plaintiff had "proved, by a preponderance of the evidence, that he was subjected to employment discrimination based on ethnicity *or* national origin in violation of Title VII," § 1981, the NYSHLR, or the NYCHRL. (Dkt. #84 (emphasis added)). The evidence at trial clearly established that Plaintiff and Finkel were of different ethnicities: Plaintiff is Hispanic, and Finkel is Caucasian. But as far as the Court can tell, neither Plaintiff nor Defendants introduced evidence that Plaintiff and Finkel were of different national origins. *See Espinoza* v. *Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) ("The term 'national origin' [as it is used in Title VII] on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Surely, "a claim of discrimination based on Hispanic ethnicity or lack thereof," in addition to anchoring a claim for ethnic discrimination, "may *also* be cognizable under the rubric of national-origin, discrimination, depending on the particular facts of each case." *Vill. of Freeport* v. *Barrella*, 814 F.3d 594, 607 (2d Cir. 2016). But the facts of the instant case — particularly those facts relevant to the distinctions between Plaintiff and Finkel — support only a claim of ethnic discrimination based on Plaintiff's Hispanic heritage. Plaintiff should think carefully about the differences between ethnic and national original discrimination in preparing to retry this case.

two-step process the Court discussed *supra* (*see* Tr. 537).  For these reasons, Plaintiff and Finkel were similarly situated for purposes of Title VII, § 1981, and the NYSHRL.

### b.     The NYCHRL

The foregoing analysis applies *a fortiori* to Plaintiff's NYCHRL claim.  "The NYCHRL … applies a more lenient standard than Title VII to discrimination … claims." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (per curiam).  Under that more lenient standard, "interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall." *Ya-Chen Chen*, 805 F.3d at 75 (internal quotation mark omitted) (quoting *Mihalik*, 715 F.3d at 109).  Put simply, "[f]or the same reasons that [Plaintiff] state[d] a discrimination claim under Title VII, the NYSHRL, and § 1981, he also state[d] a [prima facie] discrimination claim under the NYCHRL." *Green* v. *Jacob & Co. Watches, Inc.*, No. 15 Civ. 3611 (PAC), — F. Supp. 3d —, 2017 WL 1208596, at *7 (S.D.N.Y. Mar. 31, 2017).

In sum, the Court cannot conclude as a matter of law that Plaintiff failed to establish a prima facie case of discrimination under Title VII, § 1981, the NYSHRL, or the NYCHRL.  TNS's Rule 50(b) motion for judgment as a matter of law is denied.

## B.     The Court Will Not Dismiss Plaintiff's Case as a Sanction for His Conduct

### 1.     Applicable Law

"[A] court has the inherent power to impose sanction on a party for perpetrating a fraud on the Court.  Such sanctions are warranted if it is

19

established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Almeciga* v. *Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). "The essence of fraud on the court is 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'" *Town of Cortlandt* v. *Garvey*, No. 16 Civ. 9674 (GBD), 2017 WL 2484201, at *1 n.2 (S.D.N.Y. June 7, 2017) (quoting *Passlogix, Inc.* v. *2FA Tech., LLC*, 708 F. Supp. 2d 378, 393-94 (S.D.N.Y. 2010)).

"Courts in this district typically weigh five factors in determining the appropriate sanction for a fraud on the court":

> [i] [W]hether the misconduct was the product of intentional bad faith; [ii] whether and to what extent the misconduct prejudiced the other party; [iii] whether there is a pattern of misbehavior, rather than an isolated instance; [iv] whether and when the misconduct was corrected; and [v] whether further misconduct is likely to continue in the future.

*DAG Jewish Directories, Inc.* v. *Y & R Media, LLC*, No. 09 Civ. 7802 (RJH), 2010 WL 3219292, at *4 (S.D.N.Y. Aug. 12, 2010) (quoting *McMunn* v. *Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 446 (S.D.N.Y. 2002)). And in some instances, a party's fraud on the court merits "the 'powerful sanction' of dismissal with prejudice." *Id.* at *3 (quoting *McMunn*, 191 F. Supp. 2d at 461). But "dismissal is a 'harsh remedy, not to be utilized without a careful weighing of its appropriateness ... [and] one of the factors that should inform a trial

court's decision is the suitability of lesser sanctions.'" *Id.* (quoting *Dodson* v. *Runyon,* 86 F.3d 37, 39 (2d Cir.1996)).

### 2.    Analysis

TNS argues that Plaintiff perpetrated a fraud on this Court by committing three brands of misconduct.  First, TNS contends that Plaintiff lied during his deposition.  (Def. Br. 16).  Second, TNS claims that Plaintiff "submitt[ed] false statements to the EEOC."  (*Id.*).  Finally, TNS argues that Plaintiff "ma[de] numerous inconsistent and false statements throughout his trial testimony."  (*Id.*).  The Court is troubled by these allegations, and it can understand TNS's frustration with Plaintiff's conduct.  But, in light of the case law just discussed, the Court cannot conclude that this conduct rose to the level of a fraud on the Court warranting dismissal.

The thrust of TNS's argument in this regard is that Plaintiff repeatedly lied throughout this case.  For example, on cross-examination, Plaintiff admitted that he lied during his deposition about not knowing whether TNS administrator Cecilia Ponte was Hispanic.  (Tr. 197-98).  In his Charge of Discrimination to the EEOC, Plaintiff claimed that *all* of his courses were "taken away" from him.  (*Id.* at 225-26).  In fact, Plaintiff taught for over 100 hours between 2012 and 2013 alone (although at trial, Plaintiff claimed that he was teaching "workshops," and not "courses").  (*Id.*).  And when asked whether he believed that Mullane and Cezzar had discriminated against him because he is a man, Plaintiff answered "yes" on cross-examination, then backtracked on redirect examination.  (*Id.* at 178-79, 256).

In truth, most of the "false statements" TNS identifies appear to fall within one of two categories: misperceptions of questions posed by the EEOC and minor inconsistencies that often surface during cross-examination. Lest there be any doubt, the Court **does not accept** Plaintiff's attempt to justify any false testimony on his part by stating that defense counsel "talk[ed] aggressive[ly] to" him, or that he "just d[idn't] like the way" that defense counsel questioned him. (Tr. 197). That said, the Court finds that only one of the statements with which TNS takes issue constituted perjury: Plaintiff, by his own admission, lied about Cecilia Ponte during his deposition. (Pl. Opp. 23). To repeat, nothing in this Opinion should be taken to countenance such misconduct. But "[g]enerally, '[p]erjury alone does not constitute fraud upon the court.'" *Crown Awards, Inc.* v. *Trophy Depot, Inc.*, No. 15 Civ. 1178 (AJP), 2017 WL 564885, at *10 (S.D.N.Y. Feb. 13, 2017) (quoting *Skywark* v. *Isaacson*, 96 Civ. 2815 (NRB), 1999 WL 1489038 at *14 (S.D.N.Y. Oct. 14, 1999)); *see id.* at *11-12 (rejecting defendant's argument that plaintiff's witnesses committed fraud on the court, despite "clear and convincing evidence of intentional falsehoods by [plaintiff's] witnesses," including fact that two of those witnesses "admit[ted] to willfully lying in depositions," because "the[se] falsehoods did not rise to the level of an unconscionable scheme … that defiled the court itself" (internal quotation marks and citations omitted)).

"[P]erjury can be considered fraud on the court 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'" *Crown Awards*, 2017 WL 564885, at *10

(quoting *Passlogix*, 708 F. Supp. 2d at 393).  But that was not the case here: None of Plaintiff's misrepresentations concerned issues central to the jury's resolution of his claims of discrimination.  In turn, Plaintiff's conduct did not rise to the level of a fraud on the court.

And even if Plaintiff had committed a fraud on the court, the Court would not dismiss Plaintiff's case as a sanction.  The Court has considered the five factors that guide this analysis, *see DAG Jewish Directories*, 2010 WL 3219292, at *4, and concludes that none militates in favor of dismissing Plaintiff's case. This litigation is over three years old; it proceeded to a week-long jury trial. Dismissing Plaintiff's case now is far too harsh a sanction, although Plaintiff is now forewarned about the remedies available to the Court if additional false statements, or other misconduct in this litigation, is disclosed.

## CONCLUSION

For the reasons set forth above, TNS's post-trial motion is DENIED.  The Clerk of Court is directed to terminate the motion appearing at Docket Entry 94.

The Court intends to hold a second trial limited to the four claims on which the jury deadlocked — assuming the parties do not wish to settle this case themselves.  Accordingly, the parties are ORDERED to file a joint letter **on or before September 22, 2017**, explaining (i) whether they wish to retry these four claims and (ii) if so, what dates the parties will be available for a trial in April, May, and June 2018.

SO ORDERED.

Dated:      August 31, 2017
             New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

> *A copy of this Order was mailed by Chambers to:*
>
> David Arcos
> 115 East 96th Street, Apt. 12A
> New York, NY 10128